The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Thank you. Please be seated. Good afternoon. The first case this afternoon is case number 4-24-1175, Patricia Nieukirk v. OSF Health Care System et al. We'd like to proceed with appearances first for the appellant. Good afternoon, Your Honors. Jay Paulding on behalf of the plaintiff's appellant, with me is Patricia Nieukirk, the widow and administrator of the estate. All right, thank you. And for the appellees? Good afternoon, Your Honors. Catherine Weiler on behalf of OSF. Okay, thank you. Counsel, before we begin, just to... I'm so sorry, Your Honor. I'm a co-counselor. Yes, yes, I apologize. Yes, go ahead. Good afternoon, Your Honors. I'm Scott Howey. I represent the appellate circuit. All right, thank you. And again, before we begin, I want to explain that we are proceeding with a hybrid argument just in terms of the panel of judges that you see here. Justice Zinov is appearing remotely. She will be a participating member of this panel. And during the course of argument, if there is a question from Justice Zinov, just simply because of the communication issues sometimes that are presented when we have Zoom arguments, I would like for you to, if you hear Justice Zinov, stop what you're saying because I know all of you are probably well-experienced with the Zoom issues that sometimes occur, and it's easier for communication if you would just stop. So at this time, I'd like for the appellant to proceed with argument. In case of court. Counsel, good afternoon. Justice Newkirk, good afternoon. Members of the panel, I start with an analysis of a statute and a Supreme Court rule in the cases that govern us. 735 ILCS 2-1009 governs voluntary dismissal. Supreme Court rules 219C governs sanctions. Later, 219E enacted by our Supreme Court applies to cases in which there is a voluntary not-suit. What is clear is that the statute, the Supreme Court rules, and over 40 years of case law give us, members of the panel, two well-established legal principles that are applicable specifically to this case. The first legal principle is a plaintiff who has committed no sanctionable conduct, violated no discovery order, violated and committed no rule violation, is indeed allowed to refile her case, is also allowed to retool or reformat her case. She's allowed to correct prior mistakes or omissions, even of her attorneys, without consequence, says Metcalfe v. St. Elizabeth. She's allowed to even name new experts, as the court indicated in Freeman v. Craig. All subject to the discretion of the general court, correct? Once refiling is accomplished, whether or not the newly disclosed experts may proceed and present the opinions they're disclosed to hold? Well, thank you, Justice Harris. I think Supreme Court 219E was created specifically, though, to address abuses of discovery. And in that context, yes, the trial court has discretion. And it is established, though, within these rules. And something I didn't do so well in the briefs is actually read the rules word for word. I cited a lot of case law. But it bears looking at the actual rules. 219E was created to address abuses of discovery. And then, and the courts have said, it is established and stated in the rule itself, actually, that some misconduct, some discovery violation or rule violation is required before it may be applied. And if I may, 219E has two words in it, which I think is just plain and must be given their ordinary meaning. The Supreme Court rule 219E says, a party shall not be permitted to avoid compliance with discovery deadlines by voluntarily dismissing a lawsuit. Discovery deadlines. In establishing discovery deadlines and rules on permissible discovery, the court shall consider discovery undertaken any misconduct and orders entered in prior litigation involving a party. So to address your question, Justice Harris, I think the operative words within 219E is a party may not avoid compliance and discovery deadlines and the court shall consider misconduct and orders entered in the prior case. We have no misconduct here. Those two operative words are very important. Misconduct and. And I think we should give the language of 219E its plain meaning. But then 219E says we must analyze this in the framework of 219 Supreme Court 219C, which as a Bowdoin court sets forth and a Buol court sets forth. The very title, and again, I apologize for not spelling it out a little bit better in my brief. Sometimes we lawyers look at the case law and we don't go back to the simple rules that are right there in front of us. But 219C is titled, in bold, failure to comply with orders or rules. If a party, and it goes on to say, if a party, and I'm paraphrasing a little bit except for the word unreasonable, if a party or any person in incident in collusion with the party, unreasonably, unreasonably, Justice Harris, fails to comply with any provision. In other words, fails to abide by the rules of the court, discovery, request for admission, pretrial procedure. It goes on. So I think the words and, and unreasonable, and misconduct, are the operative words both within Supreme Court Rule 219C and 219E. Applying the. Good afternoon counsel, sorry to interrupt. So just so that we can clarify, isn't your position that the only reason the trial court can take into account prior orders and prior litigation is when there has been misconduct in the prior litigation? I believe it should be misconduct or discovery order violations or something that's sanctionable. I think that we can. So just go ahead, go ahead. I'm sorry. You go. So you're saying that the prior order excluding the testimony, barring the testimony of a couple expert witnesses that at the time of rebuttal witnesses cannot be taken into account in this new litigation. Is that your position? It is in the context of this case. Had there been some sanctionable conduct or we did something other than disclose a rebuttal witness, which I'll expand on that a little bit more, then I think that certainly if we had violated the orders in, you know, in the Freeman case, they violated multiple orders, in the Gibalina case, in case after case we see a consistent and constant pattern of discovery violations. Even in the case of the Buell court where it was remanded, we had a plaintiff who failed to disclose one or two of their experts, I think a Dr. Wexler, much later than it was supposed to be disclosed, a discovery violation. So yes, I am saying it within that context and reading the plain language of the statute, or the rule I should say, and the plain language of the cases. And I realize that there is some back and forth between the Jones case and then the later case of Freeman and so forth, but I think the overall picture here is that no court in Illinois has ever sanctioned a plaintiff for something that was unsanctionable or not sanctionable. There wasn't a sanction here in the first instance, in the original Faber case, or the second case, there was no violation of, no misconduct. And it bears looking at what happened, the facts of this case in context. Henry Newkirk died two days later at home. He had inside of him a medical device called a NITI device, which I think the record is pretty clear, had been in use for some 40 or 50 years. The defendants disclosed under 213F3 expert witnesses and opinions. Now one opinion talked about a sudden catastrophic event, but we got to the depositions of Dr. Armstrong, their expert, and a doctor I believe is pronounced Ah, not to be confused with Ah, it's O-D-Z-E, our expert. And when processed, the amount of scar tissue came up with an entirely new theory, that Henry had a device in him, the NITI device, that suddenly and catastrophically came apart, exploded or fell apart. This is a novel theory, one that we don't buy, we didn't buy, and we hired an expert to look at that, Dr. Ahs. He looked at that information, he looked at the slides, and he said, Henry didn't suffer a sudden catastrophe here. The NITI device did not suddenly explode or come apart. And this alternative causation theory, which would eviscerate any duty owed, because obviously if it happened at his home, it really takes away the duty and the breach. Does the record reflect when Dr. Ahs was consulted initially, in regards to the timing of the failure of the anastomosis? I'm not sure, to be honest with you, Justice Harris, if I have the exact date as to when he was consulted. Before or after defense experts were deposed? I know he was certainly consulted afterwards. Is it possible that he was hired as a consultant beforehand? It's possible, but may I respectfully say, I don't know that that necessarily would make a difference in a case like this, because plaintiffs wouldn't necessarily want to disclose all opinions in anticipation of a possible defense that they may or may not use. And I'm not sure the answer to that question. What if the opinion, and I believe it's been argued by appellees, the opinion was elicited during the deposition by plaintiffs in an effort to then build a case, essentially, for the disclosure of rebuttal witnesses? We strongly disagree with that. And the reason is because I don't think anybody anticipated a sudden catastrophic event. There's so many possible defenses that can result, and the idea that this medical device, a nitty device, that brings together the two pieces of the, pardon my late terms, of the intestine back together, and it's been used for dozens of years, according to what's in the record, and I believe by the defense experts as well, suddenly catastrophically fail? We may have had a, and I don't know the answer, but there may have been a pathologist who looked at the slides and looked at the records, and we may have had him as a consulting expert at that time to see if there's anything else that would come up. But that's the purpose of rebuttal. The plaintiff, under Holmes v. Zia, it's well established that the purpose of rebuttal is that the plaintiff has a burden of proof and cannot possibly anticipate all of the possible defenses that a defense may bring up, including a completely alternative causation theory, which in this case is a sudden catastrophe that occurred while Mr. Newkirk was laying at home on a couch two days later that this device, this medical device, would just blow apart, crumble? Can I ask, in regards to the proceedings after the refiling, and it was upon refiling the defendants moved to bar preemptively, opinions of the type that you've identified here, and did you essentially, did plaintiff essentially re-argue the motion to bar that had been argued in the original action? In other words, that this wasn't, that this was a true rebuttal opinion and that it should be allowed, or was the argument at that time in the refiled action, did it pertain to 2-1009 and 2-19E? I believe it did. It was, if it was expansive, I don't, the primary argument was that this is a refiled action. In the 2-1009, we should be allowed to maintain this expert. Dr. Odds was the rebuttal witness, and we certainly do and still do believe that under Holmes v. Zia, we should have been allowed that rebuttal. Well, and that's what I'm asking, whether or not that was argued again, so essentially a motion to reconsider or an argument asking the court to reconsider the earlier ruling barring that rebuttal testimony. Was that done in the refiled action? I think it was one of the arguments, but the primary argument, because at that time plaintiff made a choice when we decided to dismiss and refile. We could have proceeded to trial in the original action, and I think we would have, in the original action, had we continued, we would have no response, because Dr. Odds was barred, to this sudden catastrophic event, alternative theory of causation. So we could have proceeded, in our view, wasted judicial resources and money and expert fees and so forth, or dismissed, did exactly what 2109 allows for, dismissed, refiled, and named Dr. Odds in our primary case. And what's interesting is defense criticizes plaintiff for announcing to the trial court at the time, during the original action, that we were indeed going to do that. But that takes away any element of surprise, any of the Boltman factors or 219C factors. There was no surprise, no prejudice. And in fact, indeed, the defendants moved with, before we even disclosed Dr. Odds in the refiled case, we indicated an intent to do so, they refiled, we refiled, they filed a preemptory motion to strike any type of witness or any type of evidence to address, even address in its primary form, in the primary case, the idea that this mini-device did not suddenly explode or come apart. Well, another question, and this comes from your brief, you indicated that the trial court said that that's what you needed to do, that you were to refile and timely name Dr. Odds as an expert. And I'm not sure, is that in the record? Did the trial court ever advise you that this was the course that you needed to take, this being in the original action? You know, I don't have the record citation. What's coming to my mind is 178 or 179, but I believe, I don't know that the exact words were used, but this is why we believe that that occurred. Well, this is on page 26 of your brief, and it says that is exactly what the trial court had said needed to be done. And just simply wanting to know what exactly did the trial court say needed to be done? I'm sorry, I don't have the exact record citation as to that. But I think what, and if I overstated it, I'll apologize in advance if it's not in the record, but I believe there's something within the record, and I also, and I say that in good faith, not recalling right now, but the other thing that's important is defense didn't make any objection at the time. We indicated our clear intent. They didn't seek sanctions, as they did in Joan's case and many other cases. They didn't seek a cost associated with it. So we believe we were on good grounds to name Dr. Oz in our primary case. But then the trial court went another step, and then a third step, and a fourth step. After Dr. Oz was barred, Dr. Cullen, when we disclosed him and complied with the rules regarding 213F disposures, F3, Dr. Cullen was barred, an entirely new expert. And I asked the defendants, and I posed the question I believe in our brief, what exactly did plaintiff do to warrant the sanction of barring Dr. Cullen, a new expert who would be entitled to review the slides? The trial court then went on further and struck limited Dr. Moore and Dr. Balfa to any opinions in the original action, and then even disallowed supplemental opinions that were never objected to in the original action. Basically what the court did, not basically, what the court absolutely did was bar any plaintiff from presenting any evidence as to what we believe, in good faith, is a fictitious theory of causation that somehow that this new device collapsed and broke apart. And that was inappropriate. I see this indicates violence. The red light will be the end. Okay. And Judge Harris, to address your point, even if there could be an argument, and I say this hesitantly, that plaintiffs somehow should be sanctioned for disagreeing with the trial court on rebuttal. And that's what it was. We disclosed Dr. Odds in rebuttal. We believe, and still believe, that that was proper rebuttal. And in fact, defendants said in their brief, well, plaintiff had done this in response to our opinions about the sudden catastrophic event, the NITI device. Yes. And that's the precise purpose of rebuttal under Holmes v. Zia. But even if you said that somehow the plaintiff's good faith actions should be punished, or they should be sanctioned, the court Smith v. Pace and Wilkins v. Enterprise has made it clear a sanction imposed must bear some reasonable relationship to the information withheld in defiance of a discovery request. We didn't defy anything. The trial court must, said the Wilkins court, choose a sanction that will promote discovery and not impose punishment on a litigant. All Ms. Newkirk asks is for a fair shake when it comes to this case. And a trial court cannot punish a plaintiff for exercising her statutory right to refile under 2-1009. And when the court said, I just don't believe, I don't think that this plaintiff should be allowed to retool it, that really is a statutory interpretation that brings us up to the level, I see my time is up, the level of a de novo review. But even under a discretionary standard, under all the cases, and under the plain reading of the rule and statute, this case must be reversed and remanded. Thank you. I thank you. You'll have time in rebuttal. Who will proceed first with Apolli's argument? Counsel, you represent Peoria Surgical Group, is that right? I do, Your Honor. May it please the court. I am here on behalf of Defendant Apolli, Peoria Surgical Group. Your Honor, the trial court did allow the plaintiff to voluntarily dismiss and refile, without objection from the defense. And upon refiling, the trial court properly considered the prior litigation and adopted the discovery rulings it had previously made in that prior litigation. That is exactly what Rule 219E requires. It doesn't just provide it, it doesn't just allow. It requires that the trial court consider the rulings made in the prior action. And Rule 219E, if we're looking at it word for word, doesn't refer to sanctions. It refers to rulings. It refers to any misconduct. It clearly contemplates the notion that there might be one or there might be the other or there might be both, but that those are different things. And the notion that the plaintiff has advanced in his briefs and during argument today that some sort of misconduct is a necessary part, a sine qua non, of considering the rulings from the prior litigation, is simply at odds with the word for word reading of Rule 219. The discovery rulings themselves, which counsel has spent a good deal of time on this afternoon, concern utterly unremarkable evidentiary issues. The parties took issue with them. The plaintiff has considerable issue with them, obviously. But in considering them, the trial court had before it the parties who were making those arguments. It had before it all it needed to make the necessary discretionary evidentiary rulings, and Your Honor, Justice Harris pointed out that these are matters for the discretion of the trial court, just like any evidentiary ruling might be. There are a host of such evidentiary rulings in any trial. Rulings regarding the timeliness of expert disclosures are of particular salience here because it was the timeliness of the disclosure of Dr., I believe it's pronounced Odds, Dr., it's the one with the O, O-D-Z-E, that Dr. Odds was disclosed to provide what the plaintiff characterized as rebuttal opinions with respect to things that had been said during the defense expert's depositions, but which the defense maintained and the trial court agreed were not true rebuttal. I'd like to ask a question about that, just in terms of the court's ruling. Well, preliminary to that, the manner in which defendants sought to bar Dr. Odds' opinions, his plaintiffs presenting him as a rebuttal witness, was the motion to bar brought pursuant to Rule 219C as a sanction, or was it a motion brought arguing that he did not constitute a true rebuttal witness? I confess I don't recall the specific provision that the motion was brought under, but the argument was that he was not a true rebuttal witness. Okay. Is there a difference here? Because Rule 219C, we're talking about sanctions, the failure to comply with rules. Now, admittedly, if an opinion witnesses opinions go beyond disclosures, they can be barred from expressing those opinions. Is that a sanction? Probably so. But when we're talking about sanctions and misconduct, that seems to be something different than when we're talking about a discovery dispute and whether or not an opinion witness is disclosing in deposition opinions that go beyond a witness disclosure, or in this instance, where a rebuttal witness isn't offering true rebuttal opinions. Was this misconduct? Because it's being presented here on appeal as whether or not this was misconduct. And I think it probably is fair to first determine whether or not this was a dispute that related to discovery and whether or not the rebuttal witness disclosures went beyond the 213 disclosures. So it certainly can be characterized as misconduct in the sense of being presented under false pretenses as if it were rebuttal because it was being presented, as the trial court recognized and the defense argued, that the issue being concerned had been elicited by the plaintiff's counsel from the defense experts, seemingly as a way of raising the subject so as to elicit information, so as to create a false pretense for the requirement of rebuttal to respond to it. Did the trial court make any kind of finding in that regard? The trial court did not expressly make that finding. But the argument was that it was not true rebuttal in that sense, and therefore would be, in a sense, it would be misconduct. But I think it's not even necessary to determine, for purposes of this case, whether we characterize it as misconduct or not. It certainly was a discovery ruling, and at the very least, the disclosure was untimely made. Had it been made previously as part of the principal disclosures, the very thing the plaintiff indicated he wished to do on refiling, for the record, if that had happened, if it had been made timely, then it would have been a timely filed, a timely disclosed opinion properly made part of the case and may very well have been an issue at trial. The issue here really, whether it's characterized as misconduct or discovery sanction, isn't really necessary to the question of whether Rule 219E applies, because 219E refers to rulings, it refers to the possibility of misconduct, but by using the word any in reference to that, referring to quote-unquote any misconduct, it's even contemplating that there might not be any misconduct. You might say misconduct if any, and have the same effect. The point of that is that Rule 219E not only allows the circuit court and the trial court to consider what has gone before and what rulings have been made in the prior iteration of the case, but actually affirmatively requires the court to consider those rulings. The plaintiff doesn't meaningfully contest the idea in this court that the discovery rulings were on their own merits, abuses of discretion. She does take issue with them, does cite home versus Zia a couple of times. But there isn't a meaningful argument that the rulings were incorrect in and of themselves. It's not identified as an issue, as a separate issue in this case, is it? It's not. In Bale, I don't know how you pronounce the plaintiff's name, B-O-E-H-L-E, Bale versus OSF Healthcare System. In that case, that was a separate issue that was argued to the appellate court whether or not the original discovery ruling was an abuse of discretion. And then in addition, whether or not the application of 219E was proper. It doesn't seem like that's the framework of the appeal here. I think that's correct, Your Honor. What the plaintiff has done is to put all her chips on the argument that whether that ruling was correct or not, it couldn't be considered in the subsequent version of the case because, as she claims, there was no finding of misconduct. But 219E doesn't require a finding of misconduct in order to consider prior rulings. It commands the court to consider those previous rulings. It uses the word shall twice. And, in fact, the committee comments echo that wording in absolutely requiring that the trial court consider prior rulings. And it squarely refutes the idea from the plaintiff's brief, I want to be sure I get it right, that the trial court simply had no authority whatsoever to even look at the orders from the originally filed case. If we look word for word at the wording of Rule 219E, which is titled Voluntary Dismissals and Prior Litigation, it expressly requires the trial court to take into account the events of the prior case. And I quote, A party shall not be permitted to avoid compliance with discovery deadlines, orders, or applicable rules. Orders or applicable rules. That's the wording the plaintiff left out of the argument this afternoon. And it goes on to say that in establishing discovery deadlines and ruling on permissible discovery and testimony, the court shall consider discovery undertaken or the absence of same, any misconduct, and orders entered in prior litigation involving a party. There is no mention of sanction. The only mention of misconduct is with the word any. So it can be considered if it's there, but it's not a prerequisite. My time has expired. I really hope the court might be a little bit flexible and allow a few more minutes. Well, are you asking then, counsel, you would give up some of your time? Yes, Your Honor, that's correct. We discussed that in advance of the argument, that if the court prefers to focus on this issue, that's fine. All right. Well, I need to check with the bailiff to see how much time are you asking to cede? Five minutes, Your Honor. Okay, five minutes. Thank you. Thank you very much, and thank you, counsel. So the exact wording, word for word, of Rule 219E does not contain any requirement of a sanction. It doesn't have an outright requirement of misconduct, although it allows it to be considered. And there is no, counsel referred to some back and forth, as he called it, between the Freeman case in the Second District and the Jones v. Chicago Cycle case in the First, regarding the need for a finding of misconduct. Those cases are not in conflict. They are in dialogue with each other, only because there was a finding of misconduct made in Jones. I'm sorry, there was no finding of misconduct made in Jones, but the court held that it was necessary because that sanction concerned the assessment of expenses and costs, something which are not at issue here. Freeman specifically distinguished that case and that reasoning and held that when there is not, when we're talking about the sort of ruling at issue here, in this case the determination that the disclosure was belated and couldn't be allowed, that does not require a finding of misconduct. There is nothing, and the court looked specifically to the language of Rule 219E and found nothing of the sort that the plaintiff looks for here. In simplest terms, you don't want to talk about misconduct at all. You don't think you need to. I don't think we need to. We know we're talking about a ruling. You're talking about a ruling. Much broader than that. You're suggesting, or perhaps there's an inference, that that ruling is, that the plaintiff is attempting to evade that ruling by voluntarily dismissing and then coming up with experts that you say are not true rebuttal experts. We said, and the trial court in its discretion agreed, were not properly disclosed because they were, as we said, they were not true rebuttal. What the plaintiff is seeking from Section 21009 is something that the section does not provide. What the section provides is an unfettered right to voluntarily dismiss the case, and that is exactly what the trial court gave to the plaintiff. No one even objected to the voluntary dismissal. The record does not contain any indication of the trial court or anyone suggesting to the plaintiff or the plaintiff's counsel that the thing to do was to voluntarily dismiss and refile. The exchange is on page 420 of the common law record, not the trial transcript, but of the common law record, and it shows that it is a suggestion made by plaintiff's counsel himself, to which no one disagreed, but no one suggested it to him, and certainly no one endorsed it as the proper thing to do in that circumstance. I have a question, and it pertains to a case that I can't recall the name of. There are a lot of cases here that have been cited in the parties' breach, but this was a case that might have originated in Cook County, but in any event, plaintiffs voluntarily dismissed their cause of action, refiled, and in the refiled action disclosed a slew of new experts, and the defendants moved to bar. The trial court denied, and defendants appealed, and the appellate court found that it was not an abuse of discretion for the trial court to have denied the motion to bar. Do you recall that case? There are a lot of cases, Your Honor. I think I recall those facts. It was jarring. It was an entirely new slate of experts that were disclosed. I think there were five or six new ones, but ultimately what it depended on was the abuse of discretion standard, and in that case the appellate court found that the trial court was within its discretion to allow those new experts. Well, and that's what abuse of discretion means, doesn't it? That the trial court might have done something different. If the trial court had done something different, then we might be the ones with the white and the yellow briefs objecting to that and saying it was an abuse of discretion. The fact that that case, I think it might be the Beal case. Possibly. I can't quite place it myself, but the fact of it is unremarkable. The notion that the trial court might have seen those facts or even might have seen these facts and gone a different way, that's in the nature of discretion. What the plaintiff can't show is that it was an abuse of discretion for the trial court to bar the experts here. Would it have been in its discretion to do something different? It might have been. I can't say. That's not the circumstance before us. The fact is, as Your Honor has pointed out, the trial court has a great deal of discretion in the admission of evidence. These were discretionary rulings that the trial court made, and the statute and the rule require the court to consider those rulings. Not to adopt them, necessarily, but to consider them, to take them into account. And the plaintiff's argument depends on the notion, as he puts it in his brief, that the trial court can't even look at those rulings, and that's not the law. Thank you for your indulgence. And we would ask that the court affirm the judgment. All right. Thank you. Ms. Weiler, your argument? Yes, thank you, Your Honor. May it please the Court, Counsel Kathryn Weiler on behalf of OSF. Your Honors, my argument will be brief. Mr. Howley and I had discussed before the hearing today that we wanted the opportunity to focus on the issues that the court seemed most concerned about addressing, and that counsel seemed most concerned about addressing. The issue related to 1009 and to 219 applies equally to OSF as it does to PSG. So we ask that whatever consideration the court gives to that issue, it also applies that to OSF's argument. The issue I would like to address very briefly with the court is the directed verdict that was entered at trial. I will keep that short because I recognize that hasn't been a focus today. But we are asking that the court affirm and not take any issue with the trial court's finding that OSF was entitled to directed finding because the plaintiff failed to establish the applicable standard of care as to Dr. Henriquez. The court may recall it is a fact-heavy case, I recognize. Dr. Henriquez was a second-year resident at OSF. He's the only individual for whom OSF has allegedly become responsible for his conduct. He was working with the attendings at OSF. After Mr. Newkirk's surgery, he was evaluating Mr. Newkirk along with the attendings every day that Mr. Newkirk was in the hospital. And as was discussed at trial, the plaintiff failed to establish the standard of care that was applicable to Dr. Henriquez in this case. The plaintiff's expert, Dr. Boffa, her general surgeon expert, testified regarding the standard of care and specified that a second-year resident, who in this case was Dr. Henriquez, does not have the same clinical judgment as an attending physician and therefore there is a different applicable standard of care by which that individual's conduct should be evaluated by the jury. The problem in this case was that Dr. Boffa never then explained what is that standard of care. It was never defined for the jury and because the jury never had that information, the trial court properly concluded the jury could not make a determination about liability as to Dr. Henriquez and through Dr. Henriquez OSF. As a result of that, the trial court properly entered a directed verdict in favor of OSF and that ruling should be affirmed. If the court has no questions for me... I don't see any. We ask that the court affirm. Thank you, Your Honor. All right, thank you. Counsel, rebuttal argument. Yes, thank you. Counsel for PSG came up and stated that there is no requirement that the plaintiff do anything wrong, basically. But 219E, 219C... 219E refers back to 219C when evaluating what's sanctioned. And it says the word unreasonable fails to comply with discovery request to admit pretrial. Justice Harris, you brought out a very good point. You asked the question about whether or not the sanction or strike that, was a 219C sanction. It was not. Counsel may have forgotten that, but it was not. We were not sanctioned. Plaintiff was not sanctioned. Plaintiff did not commit misconduct. As he has admitted, it was just the court believed it was not true rebuttal. We are all lawyers here, but obviously the courts have the higher stature and therefore when the court speaks, the court speaks and we have no choice. Can I ask a question? Yes. It's a hypothetical, so it's unrelated to the facts of this case. But let's say you have an original action, it's a medical malpractice case, and in that case, plaintiff discloses an expert that gives standard of care, approximate cause opinions, doesn't give, let's say, life expectancy opinions in that original filed action. Deposition is taken, then defense experts are disclosed, defense experts give opinions that now plaintiff rethinks his case. Takes a voluntary dismissal, refiles, and in the refiled action discloses an expert, let's just say the same expert as in the original action, gives the same opinion disclosures but adds a life expectancy opinion. Are you saying that it would be an abuse of discretion out of the chute for the trial court to bar the expert in the refiled action from giving a life expectancy opinion, that there would have to have been this conduct in the first action in order for the plaintiff subsequent filed or in the refiled action having the expert be able to give life expectancy opinions? As the court in Gubelina said, and I think it was Gubelina, said, any further amendments to 2-1009 must be made by the legislature, even if the courts may disagree with the interpretation. So I would answer the question, if there wasn't a sanction or misconduct in doing so, it would be similar to the Freeman case where he dismissed, refiled, and in that case Dr. Brown was allowed, they replaced an expert with a completely new expert, which by the way, they allowed the defense to do 26 days before trial here. If I could just, because I think each of us... I'm sorry. I don't think it could be. I'm sorry. I'm sorry, Justice Harris, I interrupted you. Do you want to finish your question? No, please, go ahead. Thank you. Counsel, when you began your argument this afternoon, you urged us to focus on the specific language of subsection E. And you answered my question, and I believe your theme this afternoon has been that there has to be misconduct for the trial court to take into consideration the prior rulings, that there has been no misconduct. But it seems to me we have to not only look at the words in this subsection, but the punctuation. And if we look at the punctuation in the sentence you're talking about, it is apparent to me at least that there is a list that when the sentence starts, the second sentence, in establishing discovery deadlines and ruling on permissible discovery and testimony, the court shall consider. And then the list is as follows. Discovery undertaken or the absence of same, comma, any misconduct, comma. That's the comma that the next word is and orders. So I would say if there were no comma after misconduct, then we could read it the way you suggested, any misconduct and orders entered in prior litigation involving a party. But because there's the comma here, then the phrase at the end, orders entered in prior litigation involving a party, stands by itself. And that can be taken into account by the trial judge in the new litigation, at least as I read this subsection as it's written, including the punctuation. Justice Zenoff, it's a fair point, but I would say where's the order? There was no order of that indicated. And again, 219E goes back to, as it said, goes back to 219C, says the Buol Court. And 219C allows a trial court to impose sanctions if a party unreasonably, and so we have to go back to C, unreasonably fails to comply with discovery orders or rules. There was no discovery order that was violated here. As counsel has admitted and it's well established, we were allowed rebuttal. So in terms of the disclosure timing, we disclosed somebody who we thought was rebuttal. They just simply said it wasn't true rebuttal. And so when the court in Buol said unreasonably fails to comply with discovery orders or rules, there's no unreasonableness here. So there was no misconduct or orders here relating to discovery that would be applicable in this case. And if the court rules in the defendant's favor, I fear that basically you will be upending 40 years of cases and turning the idea of 21009 on its head because the whole point of something like that is we could have taken an appeal and, again, I believe wasted the judicial time on the Holmes versus Zia point, but to dismiss and re-file does allow us to correct even if it's perceived as our mistakes. And I don't believe it was a mistake. I believe we were correct under Holmes, but I do think that there was no sanction, no order either, and, you know, under Metcalfe, under all of these cases that I can go through, there's no case in Illinois that has ever, at least to this point, indicated that a plaintiff who has not committed any violation of a discovery order or sanctionable conduct or misconduct should somehow be punished, even with respect to Dr. Cohen, even if you wanted to take out Dr. Oz, but say, well, why was Dr. Cohen, a Holmes expert, removed? So we get more defense. Why are you requiring that C be read in conjunction specifically with E? I mean, aren't they two separate subsections? Well, I believe that when 219, according to, I believe, the committee comments and then also the case interpreting E, the purpose of the Supreme Court was to say, look, we're not going to let you, plaintiff, get away with dismissing the action when you're doing it to avoid discovery orders or sanctions. And in every case in which the plaintiff has, you know, been able to refile, in every case that I've read, there's been violations of orders. This is the only case in which there is no violation of an order or a violation of a sanctionable conduct. We just, as lawyers, we disagree with what is the definition of true rebuttal. Must we be punished for that? And if so, wouldn't the only option be to, as the court in those two cases I cited, be to limit the punishment or the sanction to be applicable to promote discovery? Are we going to take away any chance that the plaintiff would have to argue that this idea of a nitty device suddenly exploding? All right, counsel. Now, you are out of time, but I want to just make sure that Justice Zinoff doesn't have any follow-up questions. Do I do not? Thank you, Justice Harris. All right. I apologize for my advocacy, a little bit steamy, or if I was loud and dull. Thank you, Your Honors. Thank you very much. All right, thank you. Thank you all. The case will be taken under advisement, and the court will issue a written decision.